# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

————————————

No. 12-cv-9463 (RJS)

————————————

HECTOR LAPORTE,

Plaintiff,

VERSUS

WILLIAM KEYSER,

Defendant.

————————————

OPINION AND ORDER
September 18, 2014

————————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Hector Laporte ("Plaintiff"), who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendant William Keyser, Deputy Superintendent of Security at Sing Sing Correctional Facility ("Defendant"), alleging that Defendant's failure to protect him from another inmate constituted a violation of the Eighth and Fourteenth Amendments of the United States Constitution. Now before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## I. BACKGROUND

### A. Facts

As set forth in Plaintiff's Complaint – and referenced in Defendant's 56.1 statement – Plaintiff was incarcerated at the Green Haven Correctional Facility ("Green Haven") when, in February 2010, he was threatened with a sharp weapon by a fellow inmate named Armstrong.[1]

---

[1] The facts are taken from Defendant's Local Rule 56.1 Statement as well as the declarations and exhibits attached thereto. (Doc. No. 32 ("Def. 56.1").) Plaintiff failed to submit his own 56.1 statement, despite repeated reminders from the Court (*see* Doc. Nos. 27, 29, and 45) and his receipt of the Notice Pursuant to Local Rule 56.2 from Defendant. Accordingly, because the Court finds that the facts set forth in Defendant's 56.1 statement are supported by evidence

(Doc. No. 2 ("Compl."); Def. 56.1 ¶¶ 6, 8.) Although Plaintiff maintains that, following the incident, he requested protection from Armstrong by yelling to Defendant as he passed Plaintiff's cell and by writing multiple letters to the superintendent and other members of the Green Haven administration (Def. 56.1. ¶¶ 9, 12–14), the undisputed evidence submitted in connection with this motion reflects that Defendant did not work at Green Haven during the time in which Plaintiff alleges to have yelled to him. (*Id.* ¶ 5.) In fact, Defendant left Green Haven in January of 2008 to take a position as Deputy Superintendent of Security for Arthur Kill Correctional Facility ("Arthur Kill"). (*Id.* ¶ 3.) In September of 2009, Defendant moved from Arthur Kill to Sing Sing Correctional Facility ("Sing Sing"), where he currently holds his position as Deputy Superintendent of Security. (*Id.* ¶ 4.)

On February 10, 2010, Plaintiff was moved to administrative segregation in the Special Housing Unit due to concerns for his safety and security. (*Id.* ¶ 16.) The recommendation for segregation stated that Plaintiff had openly informed uniformed staff members of several incidents of misbehavior by other inmates, potentially creating a hostile environment. (*Id.* ¶ 17.) The recommendation, however, made

no mention of Armstrong. (*Id.* ¶ 18.) On March 29, 2010, the New York Department of Corrections and Community Supervision ("DOCCS") granted Plaintiff's request for a facility transfer. (*Id.* ¶ 19.) The transfer request likewise made no mention of Armstrong. (*Id.* ¶ 20.) Rather, the cited reason for the transfer was the animosity between Plaintiff and inmate Hector Torres, a co-defendant against whom Plaintiff had cooperated. (*Id.* ¶¶ 21–22.) Plaintiff was transferred to Sing Sing on April 6, 2010. (*Id.* ¶ 24.)

When an inmate is transferred to Sing Sing, DOCCS policies require that he be interviewed by a sergeant, who is directed to inquire as to whether the inmate has any enemies. (*Id.* ¶¶ 26–27.) If the inmate identifies any individuals in response to that inquiry, the sergeant uses the DOCCS database to investigate the matter. (*Id.* ¶ 28.) For every inmate, DOCCS maintains a so-called "separation list" that indicates whether one inmate must be separated from another for security reasons. (*Id.* ¶¶ 32, 36.) "[T]o prevent inmates from manipulating their [s]eparation [l]ists in order to receive favorable cell location[s] or facility transfers," DOCCS protocol requires a "factual substantiation of a genuine threat" before an inmate is added to a separation list. (*Id.* ¶ 39.) Once a determination is made that two inmates must be separated, each inmate is placed on the other inmate's separation list. *(Id.* ¶¶ 36–37.)

Plaintiff maintains that, upon his arrival at Sing Sing in April 2010, he told the sergeant who interviewed him that Armstrong was an "enemy." (*Id.* ¶¶ 24–25.) Armstrong, however, was never placed on Plaintiff's separation list. (*Id.* ¶ 40.) Likewise, Plaintiff did not appear on Armstrong's separation list. (*Id.* ¶ 50–51.) On March 21, 2011, unbeknownst to Plaintiff, Armstrong was transferred to Sing Sing. (*Id.* ¶¶ 45–46.) On May 31, 2012, Plaintiff encountered Armstrong

---

in the record, *see* Local Civil Rule 56.1(d) ("Each statement [included as part of the 56.1 statement] must be followed by citation to evidence which would be admissible[,]"), they are deemed admitted, *see id.* 56.1(c) ("Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *see also Gitlow v. United States*, 319 F. Supp. 2d 478, 480 (S.D.N.Y. 2004) ("[Pro se plaintiff] submitted no Rule 56.1 Statement. In consequence, the facts set forth in [defendant's] statement are taken as true for purposes of the motion."). Nevertheless, the Court has also considered Plaintiff's Affirmation (Doc. No. 49 ("Aff.")) and Plaintiff's Declaration (Doc. No. 50 ("Decl.")), both filed as part of Plaintiff's opposition papers.

in the waiting room of the Sing Sing hospital clinic, and a physical altercation ensued. (*Id.* ¶ 48.) Nevertheless, the record reflects that, prior to the May 31, 2012 incident, Defendant was unaware of any previous interactions between Plaintiff and Armstrong. (*Id.* ¶¶ 41, 50–51.) As a result of the May 31, 2012 altercation, Plaintiff alleges that he suffers from "chest and back pain," "emotional trauma," and "paranoi[a] that [his] life is in . . . danger from [Armstrong]" (Compl. at 4), for which Plaintiff seeks a "punitive and compensatory damage award" (*id.* at 13).

## B. Procedural History

On December 28, 2012, Plaintiff commenced this action by filing a complaint against Defendant pursuant to § 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution.[2] (*See* Compl.) On June 17, 2013, the Court issued a case management plan and discovery order that called for the completion of all discovery by September 30, 2013. (Doc. No. 18.) On November 21, 2013, Defendant filed the instant motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 30.) Subsequently, in a letter

received by the Court on December 3, 2013, Plaintiff sought (1) an extension of time to file his opposition to Defendant's motion for summary judgment, (2) leave "to obtain affidavits and/or declarations or to take discovery," and (3) leave to file "several motions" relating to discovery. (Doc. No. 37 at 3.) In an Order dated December 6, 2013, the Court granted Plaintiff's extension of time to file his opposition, but denied Plaintiff's requests for leave to obtain additional discovery and to make unspecified discovery motions. (*Id.* at 1.) On December 16, 2013, Plaintiff moved to amend his Complaint to include additional defendants and add new claims (Doc. No. 43), and on December 20, 2013, Defendant filed his opposition to Plaintiff's motion (Doc. No. 41). On December 27, 2013, the Court denied the Plaintiff's motion to amend without prejudice to renewal following resolution of Defendant's pending motion for summary judgment. (Doc. No. 42.) On January 28, 2014, Plaintiff filed his opposition to Defendant's motion for summary judgment (Doc. No. 48 ("Opp.")), along with a cross-motion for summary judgment in Plaintiff's favor (Doc. No. 47), but did not file a 56.1 statement with his memorandum, despite repeated admonitions by the Court to do so (Doc. Nos. 27, 29, and 45).[3] On February 4, 2014, Defendant filed a reply memorandum and reply 56.1 statement in

---

[2] Plaintiff purports to bring this claim against Defendant Keyser in his "individual and official capacity." (*See* Compl. at 13.) However, Plaintiff seeks only monetary, not injunctive, relief. (*See id.*) Accordingly, the Court construes this claim to be against Defendant in his individual capacity only. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *see also See State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law." (citation and internal quotation marks omitted)).

[3] Although Plaintiff submitted both an affirmation (Doc. No. 49) and a declaration (Doc. No. 50), and included a "Statement of the Facts" in his opposition (Opp.), he did not comply with Local Civil Rule 56.1. In any event, the "facts" listed by Plaintiff are either not supported by evidence in the record or are irrelevant to the instant motion. In addition, Plaintiff, in his opposition papers, states that "[s]ince the filing of his civil complaint against [Defendant,] [P]laintiff has been subjected to acts of harassment, threats[,] and acts of retaliation." (Opp. at 9.) To the extent Plaintiff is alleging First Amendment retaliation, this claim was not properly raised in this action. To the extent Plaintiff is responding to Defendant's motion, this topic is irrelevant to the issues before the Court.

further support of his motion.  (Doc. Nos. 51, 52.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson,* 477 U.S. at 248.  Consequently, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment."  *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (citation and internal quotation marks omitted).

Because Plaintiff appears *pro se* in this matter, the Court construes his submissions liberally and interprets them "to raise the strongest arguments [that they] suggest."  *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

## III. DISCUSSION

Plaintiff alleges that Defendant's failure to protect him from Armstrong violates both the Eighth and Fourteenth Amendments. (Compl. at 4.)  For the reasons that follow, Plaintiff's claims fail as a matter of law.

### A.  Eighth Amendment

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Indeed, "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). Accordingly, a prisoner may state an Eighth Amendment claim under the theory that prison officials failed to protect him.  *Id*. at 845.

However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Rather, the failure to protect an inmate violates the Constitution only where a two-part test – encompassing both a subjective prong and an objective prong – is met.  To satisfy the objective prong of a failure to protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834; *accord Randle v. Alexander*, 960 F. Supp. 2d 457, 473 (S.D.N.Y. 2013).  The subjective component of the claim "follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted).  To satisfy the subjective prong, the inmate must show that "the defendant [prison] official[] possessed a sufficiently culpable state of mind[.]"  *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003).  This means that "[a] prisoner injured while in custody may recover for violation of his Eighth Amendment rights [only] if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's

4

deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer*, 511 U.S. at 834). "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

In this case, it is not necessary to consider whether Plaintiff has satisfied the objective prong of the Eighth Amendment inquiry because he has clearly failed to satisfy the subjective prong.[4]   Plaintiff has failed to adduce any evidence that Defendant "kn[ew] that [Plaintiff] face[d] a substantial risk of serious harm" by being in the same facility as Armstrong. *See Hayes*, 84 F.3d at 620. First, Plaintiff's assertion in his pleadings that he shouted at Defendant from his cell in February 2010 is entitled to no weight and is belied by the undisputed record, which shows that Defendant was not working at Green Haven when Plaintiff claims to have communicated with him. (Def. 56.1 ¶¶ 5, 9, 12–14.) Second, Plaintiff's assertions – that he wrote numerous letters to the superintendent at Green Haven (*id.* ¶¶ 14, 44), and that, upon his arrival at Sing Sing, he informed a sergeant that Armstrong "was an enemy" (*id.* ¶ 25; Decl. ¶ 12) – are insufficient to establish that Defendant himself knew that Plaintiff perceived Armstrong as an enemy, or that Defendant even knew that

---

[4] It is not uncommon for courts to focus first on the subjective element when deciding whether an Eighth Amendment claim rises to the level of a constitutional violation. *See, e.g.*, *Morales v. Seltzer*, 300 F. App'x 92, 93 (2d Cir. 2008) (summary order) (affirming the judgment of the district court because the plaintiff did not demonstrate that a genuine issue of material fact existed as to whether the defendants knew of and disregarded an excessive risk to inmate health or safety); *Trammell*, 338 F.3d at 162 (declining to reach the objective element because the subjective element was not satisfied).

Plaintiff and Armstrong had a prior relationship of any kind.

There is simply no evidence in the record to suggest that Defendant was privy to the animosity between Plaintiff and Armstrong. The two inmates were not placed on each other's separation lists in the DOCCS database (Def. 56.1 ¶ 40), and neither the transfer request nor the request for segregation ever mentioned the hostility between Plaintiff and Armstrong (*id.* ¶¶ 18, 20). To be sure, Plaintiff's Affirmation states, in a wholly conclusory fashion, that "Defendant Keyser should have been informed by the sergeant at intake [that Plaintiff named Armstrong as an enemy] . . . ." (Aff. ¶ 16.) However, there is no evidence in the record that the sergeant was *supposed* to share this type of information with Defendant, much less that Defendant was so informed by the sergeant. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."). In other words, Plaintiff has put forward no evidence of Defendant's knowledge about the prior relationship between Plaintiff and Armstrong, much less evidence of a "sufficiently culpable state of mind" on the part of Defendant. *See Trammell*, 338 F.3d at 161.

Because Plaintiff cannot satisfy the subjective element of an Eighth Amendment claim, his allegation that Defendant failed to protect him from Armstrong does not rise to the level of a constitutional violation.[5]

### B.   Fourteenth Amendment

Plaintiff also purports to bring a Fourteenth Amendment claim, alleging that Defendant

---

[5] The Court's conclusion obviates the need to address Defendant's alternative qualified immunity argument.

violated his "rights of procedural and substantive due process by allowing a known sworn enemy to be housed at the same prison and continuing to house my sworn enemy at the same prison." (Compl. at 4.) "To present a due process claim [under the Fourteenth Amendment], a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and internal quotation marks omitted). The substance of Plaintiff's allegations do not concern Plaintiff's liberty interest. Rather, his allegations are premised on Defendant's failure to protect him and prevent the physical altercation with Armstrong. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (recognizing that the "special relationship" between a prison and an inmate "give[s] rise to a governmental duty to protect against third-party attacks" that may be actionable under the Eighth Amendment). At their core, Plaintiff's allegations sound in the Eighth Amendment, not the Fourteenth Amendment. Accordingly, Plaintiff has failed to allege a claim under the Fourteenth Amendment.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 30 and 47.

To the extent that Plaintiff wishes to amend his Complaint, he must file a motion to amend no later than October 24, 2014. The motion should include a proposed amended complaint, which shall state with specificity Plaintiff's contemplated claims and shall also clearly list all defendants whom Plaintiff seeks to add.

Plaintiff's motions shall also indicate whether he has properly exhausted his contemplated claims. If Plaintiff does not file a motion requesting leave to amend his Complaint by October 24, 2014, this case will be closed with prejudice.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 18, 2014
New York, New York

* * *

Plaintiff is proceeding *pro se*.

Defendant is represented by Michael Francis Albanese, State of New York, Attorney General's Office, 120 Broadway, New York, New York 10271

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-18-14

6

A copy of this Opinion and Order was mailed to:

Hector Laporte
03-A-5560
Attica Correctional Facility
Box 149
Attica, NY 14011-0149